## THOMAS A. HOWLAND *v.* LOUIS J. DOYLE & another.

W. W. U. and L. J. D., the defendants, held a policy of fire insurance, upon which a loss was claimed, as trustees for the creditors of W. H. R., to whom the loss was by the terms of the policy payable; it being indorsed upon the policy, below the transfer, by an agent of the insurance company who had countersigned the policy, that the transfer to them had been accepted and recorded. The defendants permitted their assignor, W. H. R., to trade off the policy to the plaintiff and to receive the consideration therefor; they, as a joint act, merely transferring " all their right, title, and interest in the policy " to the plaintiff, in fulfilment of the bargain of their assignor. At the time of their transfer of the policy to the plaintiff, the plaintiff desired both the defendants to guarantee to him that the loss due upon the policy had been duly reported to the insurance company, and that " said insurance company is well and truly indebted to us for the amount thereof," which L. J. D. did, at the time, in writing, but which W. W. U. expressly refused to do. The plaintiff, failing to recover the loss upon the policy of the insurance company, upon the ground that the transfer of the policy to the defendants was void by the terms of the policy, because not authorized by the company, their agent who authorized it having no power for *that* purpose, now sued both the defendants to recover back the consideration paid by him to W. H. R. for the policy, upon the ground of the failure of title. *Held,* that there being no implied warranty of title by *both* the defendants in a case where it was expressly understood that, in case of failure of title, the plaintiff was to rely solely upon the express warranty of title by one of them, that the plaintiff could not recover back of both the defendants the consideration paid by him to W. H. R. on account of such failure; the theory of such a case being, that it was understood by *all* parties, that the bargain should be at an end if the plaintiff should not have obtained a good title.

ASSUMPSIT for money had and received, in which a jury trial being waived, the following facts were proved to the court. The defendants, Louis J. Doyle and Walter W. Updike, were the assignees of one William H. Reynolds, under a voluntary assignment executed by said Reynolds to them for the benefit of his creditors. Amongst other assets turned over by said Reynolds to the defendants, as his assignees, was a policy of insurance, issued by " the Metropolitan Fire and Marine Insurance Company," of Boston, purporting to insure the mill and machinery of the Eureka Manufacturing Company, of Mansfield, to the amount of $1,000, against loss or damage by fire; the policy, in case of loss, being by its terms payable to Reynolds, and being countersigned by one Philip E. Hill, as the agent of the company at Taunton, through whom the insurance was effected. The defendants received a transfer of the policy, from Reynolds, by an indorsement on the policy, as follows :

Howland *v.* Doyle & another.

"PROVIDENCE, Sept. 18, 1854.

" For value received, I hereby transfer, assign, and set over unto Louis J. Doyle and W. W. Updike, assignees, all my right, title, and interest in this policy of insurance, and all benefit and advantage to be derived therefrom.

    (Signed)     WM. H. REYNOLDS."

Below this, the following was indorsed on the policy :—

"TAUNTON, Sept. 20, 1854.

" The above transfer accepted and recorded by

    (Signed)     PHILIP E. HILL, *Agent.*"

After the transfer, Reynolds took possession of the policy, and traded off the same to the plaintiff, together with other paper and some goods, the policy being rated in the trade at $400, for a bill of exchange, the acceptance of which turned out to be forged, but for which Reynolds afterwards obtained, upon compromise with the plaintiff, some $500; but it did not appear that any part of the consideration came to the hands of the defendants. At or about the time of the exchange of the policy for the bill of exchange aforesaid, the defendants, at the request of Reynolds, executed the following writing on the back of the policy :—

"PROVIDENCE, Dec. 15, 1854.

" For value received, we hereby transfer, assign, sell and set over unto Thomas A. Howland, all our right, title, and interest in and to the within policy, as assignees of Wm. H. Reynolds.

    (Signed)     W. W. UPDIKE,

           LOUIS J. DOYLE,

     *Assignees of W. H. Reynolds.*"

At or about the time of the trade, the following writing, bearing even date with the above transfer, was executed by Doyle, but was refused to be executed by Updike.

"PROVIDENCE, Dec. 15, 1854.

" We, W. W. Updike and Louis J. Doyle, assignees of Wm. H. Reynolds, of Providence, have this day sold, as assignees, one

certain policy of insurance issued by the Metropolitan Fire Insurance Company, of Boston, and numbered thirty-seven, (37,) to Thomas A. Howland, of said Providence; and by this instrument, we guarantee, as assignees of said Reynolds, that said loss has been reported to the said insurance company in due form, as provided in section No. 9, set forth in said policy, and that said insurance company is well and truly indebted to us, as assignees, for the amount thereof.

(Signed)         LOUIS J. DOYLE,
*for Assignees.*"

It appeared also from the evidence, that Doyle had no authority from Updike to execute the above instrument for the assignees. There having been a loss upon this policy, the same was presented by the plaintiff to the insurance company for payment, but payment was refused on the ground that Hill, as was proved, had no authority to authorize transfers of policies, and that by transfer, without authority, the policy, by its terms, became void. Upon this refusal of the insurance company to pay, the plaintiff, some time in March, 1857, offered to retransfer the policy to the defendants, and claimed repayment of the consideration, and no attention having been paid to his request, brought this action.

*Cozzens,* for plaintiff, to the point, that the title to the policy was warranted under the facts proved, cited *Defreeze* v. *Trumper,* 1 Johns. R. 274; Long on Sales, 203, and notes; 2 Blacks. Com. 451; 3 Ibid. 165; 2 Kent, Com. 478; *Thrall* v. *Newell,* 19 Vt. 208; Story on Contracts, § 833; Am. Jurist, Vol. 12, p. 312; 1 Parsons on Cont. 456, and notes; *Coolidge* v. *Brigham,* 1 Metc. 551; *Boyd* v. *Bopst,* 2 Dall. 91; *Dresser* v. *Ainsworth,* 9 Barb. Sup. Ct. R. 619; 1 Serg. & R. 48; *Gompertz* v. *Bartlett,* 24 Eng. L. & Eq. 156; *Young* v. *Cole,* 3 Bingh. N. C. 724; *Jones* v. *Ryde,* 5 Taunt. 486; *Gurney* v. *Wormesley,* 28 Eng. L. & Eq. 256; *Boyd* v. *Anderson,* 1 Overton, 338; *Presbury* v. *Morris,* 18 Mis. 165; *Boisgerard* v. *N. Y. Banking Co.* 2 Sandf. Ch. R. 23; *Putnam* v. *Westcott,* 19 Johns. 73; *Colville* v. *Bixby,* 2 Denio, 139; *Cristy* v. *Cummins,* 3 McLean, 386; *Foster* v. *Smith,* 37 Eng. L. & Eq. 218; *Fowler* v. *Shearer,* 7 Mass. 31;

*Spring* v. *Coffin*, 10 Mass. 31; *Hastings* v. *Lovering*, 2 Pick. 214; *Morris* v. *Maryatt*, 7 Eng. L. & Eq. 331; *Bridge* v. *Wain*, 1 Starkie, 504.

*C. Updike*, for the defendants, submitted the case without argument.

AMES, C. J. By the common law of England there is no warranty of title, any more than of quality, implied from the mere fact of the sale of a chattel, the rule of *caveat emptor* applying to both. If there is no fraud in the vendor, as in selling as his own that which he knows to be another's, and no warranty of title by his affirmations or conduct, or according to the usage or nature of the trade in which he is engaged, he is not liable for a bad title. The law is thus laid down in Co. Litt. 102, a; 3 Rep. 22, a; Noy's Max. 42; Fitzh. Nat. Brev. 94, c; *Spring-well* v. *Allen*, Aleyn, 91; *Deering* v. *Farringdon*, 3 Keb. 304; and is equally well established in Westminster Hall at the present day. *Early v. Garrett*, 9 B. & C. 932; *Omrod* v. *Huth*, 14 M. & W. 664; *Morley* v. *Attenborough*, 3 Exch. Rep. 499; *Kintrea* v. *Preston*, 37 Eng. L. & Eq. R. 557; *Hall* v. *Conder*, 38 Eng. L. & Eq. R. 253. It is true that the incautious remarks of some text-writers and judges have given rise to the notion that the rule of *caveat emptor*, in application to sales of personalty, has, in modern times, been exploded, in whole or in part, as a doctrine of the common law; and it is certain that such a notion extensively prevails in this country at the present day, so far as title is concerned. Except to preserve the symmetry of the common-law system, it is perhaps of little practical importance whether a warranty of title be implied from the mere fact of the sale of a chattel, or not, since any affirmation of title by the vendor's words or conduct, would amount to a warranty everywhere; and such a warranty might be proved by the usage of a trade, or be implied even from the nature of the trade in which the transaction occurred. Per Parke, B., *Morley* v. *Attenborough*, 3 Exch. Rep. 512.

But whatever may be the rule adopted in this respect, it is evident that no warranty of title to, or of the validity of, this policy can be implied against the defendants, under the circumstances disclosed to us by the evidence in this case. The whole con-

duct of the negotiation, as well as the position of the defendants as mere trustees, indicates that they did not intend to warrant anything.   The assignor, Reynolds, without prior authority from, or consultation with the defendants, his assignees, appears to have entered into an irregular traffic with the plaintiff, in which he traded off this policy, rated at $400, certain doubtful promissory notes, and some shoes, for an acceptance purporting to be of the value of $1,500, which turned out to be forged.   Reynolds received, and, so far as appears, disposed, of to his own benefit, what of consideration he subsequently got out of the plaintiff in settlement of the forged acceptance ; and the part of the defendants, in their joint character as assignees, seems to have been confined to the mere formal sign-* ing of the instrument of transfer on the back of the policy. By this instrument, they do not profess to convey the policy, but only " all our right, title, and interest in and to the within policy, as assignees of Wm. H. Reynolds."   It is evident, that the plaintiff did not suppose that he had by this transfer any such warranty as he now pretends ; because, contemporaneously with the transfer, he obtains from Doyle, one of the defendants, a special written guaranty, not only that the loss under the policy had been proved to the office according to its rules, but " that said insurance company *is well and truly indebted to us, as assignees,* for the amount thereof."   Now it appears, that both the transfer and the guaranty were originally executed by Doyle alone, for the assignees ; but it being found that he had no authority to act for his co-assignee, Updike, and that *his* signature would be necessary to perfect the transfer of the policy, Updike consented to sign, and did sign the transfer, but absolutely refused to sign the warranty.   The effect of this is, that the plaintiff took the transfer of this policy, with the understanding, that one of the assignees would, as a joint act, warrant nothing, and that so far as warranty was concerned, he must rely solely upon the express engagement of the other.   This is not a case, therefore, in which recovery can be had of the defendants upon the ground of failure of consideration ; the theory of such a case being, that it was understood by *all* parties, that the bargain should be at an end if the plaintiff should not have obtained a

good title.   The assignees, looking at their *joint* action, in sanctioning by their transfer this sharp bargain between Reynolds and the plaintiff, evidently intended to hold up the rule of *caveat emptor*, as most appropriate to the transaction, and in substance, say to the plaintiff: " Make what bargain you will, and pay what you will, to our assignor; we transfer to you what we have got from him, without warranty; you to take the risk of the transfer's availing you, except so far as you are secured in that respect by the warranty of one of us."   Under such circumstances, and in the absence of all fraud, the remedy of the plaintiff, as it seems to us, is solely on the express warranty which he took from *one* of the defendants; and therefore judgment must be entered for the defendants, in this action, brought by him against *both* of them.